18 F.3d 1173
 UNITED STATES of America, Plaintiff-Appellee,
v.
Casy Andrew CRAWFORD, a/k/a Casey Andrew Crawford, a/k/a
Andrew C. Crawford, a/k/a Sean Wilson, a/k/a Jason
Johnson, a/k/a Casey Crawford,
Defendant-Appellant.
 No. 93-5282.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 9, 1994.
Decided March 15, 1994.
 
 ARGUED: Henry Kowalchick, Norfolk, VA, for appellant. Alan Mark Salsbury, Asst. U.S. Atty., Norfolk, VA, for appellee. ON BRIEF: Kenneth E. Melson, U.S. Atty., Norfolk, VA, for appellee.
 Before HAMILTON and WILLIAMS, Circuit Judges, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 HAMILTON, Circuit Judge:
 
 
 1
 This appeal presents three principal issues. The first and most salient is whether 8 U.S.C. Sec. 1326(b) is a separate criminal offense or a sentence enhancement provision. The second is whether, in calculating a defendant's sentence, the use of a prior aggravated felony conviction to enhance a defendant's base offense level by sixteen levels pursuant to United States Sentencing Commission, Guidelines Manual, Sec. 2L1.2(b)(2) and the use of the same prior aggravated felony conviction to assess six criminal history points pursuant to U.S.S.G. Sec. 4A1.1(a) (three points), U.S.S.G. Sec. 4A1.1(d) (two points), and U.S.S.G. Sec. 4A1.1(e) (one point), amounts to impermissible "double counting." The third issue, which is related to the second, is whether the use of the same prior aggravated felony conviction to assess six criminal history points pursuant to U.S.S.G. Sec. 4A1.1(a), U.S.S.G. Sec. 4A1.1(d), and U.S.S.G. Sec. 4A1.1(e) amounts to impermissible "triple counting." In a published opinion, the district court held that Sec. 1326(b) is a sentence enhancement provision and rejected the "double counting" and "triple counting" arguments. United States v. Crawford, 815 F.Supp. 920 (E.D.Va.1993). We now affirm.
 
 
 2
 * The relevant facts of this appeal are not in dispute. On November 15, 1990, Casy Andrew Crawford, a Jamaican national, was convicted in Virginia state court of possession with intent to distribute cocaine, an aggravated felony, see 8 U.S.C. Sec. 1101(a)(43). Crawford was sentenced to ten years' imprisonment. In December 1991, Crawford was paroled by local authorities to the Newport News Pre-Release Program. Two days later, Crawford fled. In January 1992, agents of the United States Immigration and Naturalization Service arrested Crawford in Portsmouth, Virginia and deported him two weeks later.
 
 
 3
 In April 1992, Crawford reentered the United States sub rosa. He was eventually arrested in July 1992 and charged in a one count indictment with unauthorized reentry into the United States by a previously deported alien in violation of 8 U.S.C. Sec. 1326.[1] At trial, the jury was instructed in the following manner:
 
 
 4
 First, that the defendant was an alien at the time alleged in the indictment; [s]econd, that the defendant previously had been arrested and deported from the United States; [t]hird, ... that thereafter the defendant unlawfully entered or was found unlawfully present in the United States; and [f]ourth, that the defendant had not received the consent of the Attorney General of the United States to apply for readmission to the United States since the time of the defendant's previous deportation.
 
 
 5
 (J.A. 58).[2] The jury convicted Crawford and the case proceeded to sentencing. The district court calculated Crawford's offense level to be twenty-two. Crawford's offense level consisted of a base offense level of eight, U.S.S.G. Sec. 2L1.2(a), and a sixteen level enhancement because Crawford "was deported after a conviction for an aggravated felony," U.S.S.G. Sec. 2L1.2(b)(2).[3] The district court reduced Crawford's offense level by two levels for acceptance of responsibility, see U.S.S.G. Sec. 3E1.1, resulting in a final offense level of twenty-two.
 
 
 6
 The district court calculated Crawford's criminal history points to be twelve, resulting in a criminal history category of V. Notably, Crawford's November 1990 aggravated felony conviction accounted for six of his twelve criminal history points. Crawford received three points because the sentence Crawford received for his November 1990 aggravated felony conviction "exceed[ed] one year and one month," U.S.S.G. Sec. 4A1.1(a); two points because the Sec. 1326 violation was committed while Crawford was on probation for the November 1990 aggravated felony, U.S.S.G. Sec. 4A1.1(d); and one point because the Sec. 1326 offense was committed less than two years after his release from imprisonment on the November 1990 aggravated felony and because two points were awarded under U.S.S.G. Sec. 4A1.1(d). U.S.S.G. Sec. 4A1.1(e).
 
 
 7
 Based on an offense level of twenty-two and a criminal history category of V, Crawford's guidelines sentencing range was seventy-seven to ninety-six months. The district court sentenced Crawford to seventy-seven months' imprisonment. Crawford now appeals.
 
 II
 
 8
 Crawford contends that, because he "was indicted, tried by a jury and convicted of a violation of Title 8, Section 1326(a) of the United States Code which carries a maximum penalty of two years imprisonment," Appellant's Brief at 14-15, the district court erred in sentencing him to seventy-seven months' imprisonment pursuant to 8 U.S.C. Sec. 1326(b)(2), which carries a maximum of fifteen years' imprisonment. Asserting that Sec. 1326(b) is not a sentence enhancement provision, but rather a separate criminal offense, Crawford argues that the district court could not sentence him under Sec. 1326(b)(2) unless the government charged his prior aggravated felony conviction in his indictment and proved that offense beyond a reasonable doubt at trial.
 
 
 9
 The government responds to Crawford's position by asserting that Sec. 1326(b) is a sentence enhancement provision and, therefore, not an element that it was required to charge in Crawford's indictment. Because the district court was satisfied by a preponderance of evidence that Crawford's "deportation was subsequent to a conviction for [the] commission of an aggravated felony," 8 U.S.C. Sec. 1326(b)(2), see also U.S.S.G. Sec. 2L1.2(b)(2), the government argues that the district court correctly enhanced Crawford's sentence.
 
 
 10
 The issue of whether subsection (b) of Sec. 1326 defines a separate criminal offense or creates a sentence enhancement provision is an issue of first impression for this circuit. Prior to a 1988 amendment, 8 U.S.C. Sec. 1326 read as follows:
 
 Sec. 1326. Reentry of deported alien
 
 11
 Any alien who--
 
 
 12
 (1) has been arrested and deported or excluded and deported, and thereafter
 
 
 13
 (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
 
 
 14
 shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.
 
 
 15
 In 1988 and 1990, 8 U.S.C. Sec. 1326 was amended[4] and now reads as follows:
 
 
 16
 Sec. 1326. Reentry of deported alien; criminal penalties for reentry of certain deported aliens
 
 
 17
 (a) Subject to subsection (b) of this section, any alien who--
 
 
 18
 (1) has been arrested and deported or excluded and deported, and thereafter
 
 
 19
 (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
 
 
 20
 shall be fined under Title 18, or imprisoned not more than 2 years, or both.
 
 
 21
 (b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--
 
 
 22
 (1) whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 5 years, or both; or
 
 
 23
 (2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both.[5]
 
 
 24
 Our task here is to discern whether the 1988 amendment created a new separate offense under subsection (b) or merely created a sentence enhancement for those aliens who violate subsection (a). We believe that the plain language of subsection (b) suggests that it is a sentence enhancement provision. By its plain language, subsection (a) defines the offense of reentering the United States by a previously deported alien and subjects a transgressor to a two-year maximum sentence. Subsection (a), however, expressly provides that it is "[s]ubject to subsection (b)." By its plain language, subsection (b) applies stiffer penalties to certain classes of aliens, and its penalty provisions apply "[n]otwithstanding" the penalty delineated in subsection (a).
 
 
 25
 Crawford argues that subsection (b) incorporates the elements of subsection (a) and adds an additional element, either conviction of a felony, subsection (b)(1), or conviction of an aggravated felony, subsection (b)(2), to create a new and separate offense. We believe this argument founders on the fact that "[i]t is highly unlikely that Congress would structure the statute in such a way that subsection (b) is dependant on elements of subsection (a), if it intended for subsection (b) to be a separate criminal offense." United States v. Vasquez-Olvera, 999 F.2d 943, 946 (5th Cir.1993). Accordingly, we believe subsection (a) defines the offense of unlawfully reentering the United States by a previously deported alien and sets a maximum sentence for all aliens whose sentences are not governed by subsection (b)(1) or subsection (b)(2). Subsection (b) establishes enhanced penalties for aliens who violate subsection (a) and whose deportations occurred after a conviction for a felony or an aggravated felony. In short, any alien who violates subsection (a) is "subject to" the penalty provisions of subsection (b).
 
 
 26
 Our conclusion is supported by the changes in the title to Sec. 1326 by the 1988 amendment. Before the 1988 amendment, the statute was entitled: "Reentry of deported alien." However, when Congress amended the body of the statute by adding subsection (b), it also amended the title of the statute to read: "Reentry of deported alien; criminal penalties for reentry of certain deported aliens." (emphasis added). This change in title indicates that, by amending Sec. 1326, Congress intended to create enhanced penalties for "certain" aliens who commit the underlying offense of unlawfully reentering the United States after having been previously deported, not to create a separate substantive offense for "certain deported aliens." Cf. Vasquez-Olvera, 999 F.2d at 945 (New Sec. 1326 title "indicates that section 1326 provides for one crime--reentry of deported aliens--but harsher penalties for certain classes of deported aliens--those committing felonies.").
 
 
 27
 Our holding is consistent with the Fifth Circuit's recent decision in Vasquez-Olvera. In concluding that subsection (b) was a sentence enhancement provision, the Vasquez-Olvera court relied on: (1) the fact that subsection (b) does not come into play until after proof of the elements of subsection (a); (2) the fact that the penalty provisions in subsection (b) in effect multiply the penalties delineated in subsection (a); and (3) the 1988 amendment to the title of Sec. 1326. Id. In the alternative, the court reasoned that subsection (b) was a sentence enhancement provision because "the plain language of the statute so indicates." Id.
 
 
 28
 We are aware, however, that our decision is not consistent with a series of Ninth Circuit cases holding that subsection (b)(1) and subsection (b)(2) are separate offenses and not sentence enhancement provisions. See United States v. Campos-Martinez, 976 F.2d 589 (9th Cir.1992) (subsection (a) and subsection (b) constitute separate crimes); United States v. Gonzalez-Medina, 976 F.2d 570 (9th Cir.1992) (same); United States v. Arias-Granados, 941 F.2d 996, 998 (9th Cir.1991) (dicta) ("[a] prior felony conviction is an element of the crime with which appellants were charged, 8 U.S.C. Sec. 1326(b)(1), but is not an element of the crime to which they pleaded guilty, 8 U.S.C. Sec. 1326(a)."). We believe, however, that our analysis of Sec. 1326, as well as that of the Fifth Circuit's in Vasquez-Olvera, is more faithful to its plain language and more reasoned.
 
 
 29
 In Campos-Martinez, the defendant, who had previously been deported subsequent to a felony conviction, was indicted and pleaded guilty under Sec. 1326 to unlawful reentry into the United States after having been deported. The defendant was sentenced under subsection (b)(1) to thirty months' imprisonment. The defendant appealed his sentence arguing that subsection (b) was not a sentence enhancement provision, but rather a separate criminal offense. The Ninth Circuit agreed, vacated the defendant's sentence, and remanded for resentencing.
 
 
 30
 The Campos-Martinez court did not engage in a textual analysis of the plain language of Sec. 1326, but rather relied almost exclusively on its case law interpreting 8 U.S.C. Sec. 1325, which the court believed was a statute analogous to Sec. 1326. Campos-Martinez, 976 F.2d at 591-92. Section 1325 provides in part:
 
 
 31
 Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than 2 years, or both.
 
 
 32
 The Ninth Circuit went on to explain that it had previously interpreted Sec. 1325(a) to mean that "a previous conviction for illegal entry is an element of the felony offense under section 1325." Campos-Martinez, 976 F.2d at 591 (citations omitted). The Campos-Martinez court then concluded that, because the previous conviction was an element of a Sec. 1325 offense, it must follow that the previous conviction is an element of a Secs. 1326(b)(1) or (b)(2) offense.
 
 
 33
 We reject the Ninth's Circuit's view that subsection (b) is a separate offense. First, as noted above, such a conclusion is simply not consistent with the plain language of the statute which we are bound to uphold. Second, the prior conviction in a Sec. 1325 offense is, in our view, a sentence enhancement provision, rather than a separate criminal offense because both of the penalty provisions of Sec. 1325 apply to any "such offense" committed under that section. In summary, we hold that the plain language of Sec. 1326 indicates that subsection (b) is a sentence enhancement provision rather than a separate criminal offense.
 
 III
 
 34
 Crawford also argues that the use of his November 1990 aggravated felony conviction to enhance his base offense level by sixteen levels pursuant to U.S.S.G. Sec. 2L1.2(b)(2) and the use of the same aggravated felony conviction to assess six criminal history points pursuant to U.S.S.G. Sec. 4A1.1(a), U.S.S.G. Sec. 4A1.1(d), and U.S.S.G. Sec. 4A1.1(e) amounts to impermissible "double counting."
 
 
 35
 Section 2L1.1 of the guidelines provides the framework for calculating the offense level for various offenses, including unlawfully reentering the United States. Section 2L1.2(a) establishes a base offense level of eight. Section 2L1.2(b) assesses enhancements for certain enumerated aggravating factors. For example, U.S.S.G. Sec. 2L1.2(b)(1) instructs the sentencing judge to enhance a defendant's base offense level by four levels "[i]f the defendant previously was deported after a conviction for a felony, other than a felony involving violation of the immigration laws." Section 2L1.2(b)(2) instructs the sentencing judge to enhance a defendant's base offense level by sixteen levels "[i]f the defendant previously was deported after a conviction for an aggravated felony." Section 2L1.1(b) also instructs the sentencing judge to apply the greater of subsection (b)(1) or subsection (b)(2), but not both, if both subsection (b)(1) and subsection (b)(2) apply. Notably, Application Note Five to Sec. 2L1.2 provides: "An adjustment under (b)(1) or (b)(2) for a prior felony conviction applies in addition to any criminal history points added for such conviction in Chapter Four, Part A (Criminal History)."
 
 
 36
 Section 4A1.1 provides the basic framework for calculating a defendant's criminal history category. Section 4A1.1 employs a graduated approach, assessing criminal history points to various types of aggravating conduct. For example, three points are assessed for each "prior sentence"[6] of the defendant that "exceed[ed] one year and one month," U.S.S.G. Sec. 4A1.1(a), while two points are assessed "for each prior sentence of imprisonment of at least sixty days not counted in (a)," U.S.S.G. Sec. 4A1.1(b). One point is awarded for "each prior sentence not counted in (a) or (b), up to a total of 4 points for this item." U.S.S.G. Sec. 4A.1(c). Two points are awarded "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. Sec. 4A1.1(d). In addition, two points are assessed "if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b) or while in imprisonment or escape status on such a sentence." U.S.S.G. Sec. 4A1.1(e). However, if two points are assessed under U.S.S.G. Sec. 4A1.1(d), only one point is assessed under U.S.S.G. Sec. 4A1.1(e). Id. Finally, one point is assessed "for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) ... because such sentence was considered related to another sentence resulting from a conviction of a crime of violence, up to a total of[3] points for this item. Provided, that this item does not apply where the sentences are considered related because the offenses occurred on the same occasion." U.S.S.G. Sec. 4A1.1(f).
 
 
 37
 In this case, Crawford's base offense level was calculated by the district court at eight, U.S.S.G. Sec. 2L1.2(a), and upwardly adjusted by sixteen levels for his November 1990 aggravated felony conviction, U.S.S.G. Sec. 2L1.2(b)(2). Crawford's offense level was reduced by two levels for acceptance of responsibility, U.S.S.G. Sec. 3E1.1, resulting in a final offense level of twenty-two.
 
 
 38
 Crawford was assessed a total of twelve criminal history points, resulting in a criminal history category of V. Six of Crawford's twelve criminal history points arose from his November 1990 aggravated felony conviction. Specifically, Crawford received three points under U.S.S.G. Sec. 4A1.1(a); two points under U.S.S.G. Sec. 4A1.1(d); and one point under U.S.S.G. Sec. 4A1.1(e).
 
 
 39
 In a literal sense, Crawford's November 1990 aggravated felony conviction was counted twice--it was employed to enhance his offense level and his criminal history category. However, Crawford does not, nor could he, argue that the district court did not follow the plain meaning of the guidelines as written. Rather, without citing to any authority, Crawford contends that the Sentencing Commission did not intend such a result. We disagree.
 
 
 40
 We have repeatedly emphasized that the guidelines should be applied "as written." United States v. Williams, 954 F.2d 204, 206 (4th Cir.1992); see also United States v. Harriott, 976 F.2d 198, 203 (4th Cir.1992). To effectuate this principle, "double counting" is permissible under the guidelines except where it is expressly prohibited. Williams, 954 F.2d at 208; United States v. Curtis, 934 F.2d 553, 556 (4th Cir.1991). Crawford's concession that the district court faithfully applied the guidelines is reason enough to reject his argument. In other words, because the guidelines do not expressly prohibit the use of Crawford's November 1990 aggravated felony conviction to enhance his base offense level by sixteen levels, U.S.S.G. Sec. 2L1.2(b)(2), and prohibit the use of the same aggravated felony conviction to assess six criminal history points, U.S.S.G. Sec. 4A1.1(a), U.S.S.G. Sec. 4A1.1(d), and U.S.S.G. Sec. 4A1.1(e), we are not at liberty to disturb an otherwise proper application of the guidelines. Our holding here is consistent with cases from other circuits dealing with "double counting" in the Sec. 1326 context. See United States v. Zapata, 1 F.3d 46, 48-49 (1st Cir.1993) (upholding "double counting" between U.S.S.G. Secs. 2L1.2(b)(2) and 4A1.1(b)); United States v. Adeleke, 968 F.2d 1159, 1161 (11th Cir.1992) (rejecting contention that U.S.S.G. Sec. 2L1.2(b)(1) punishes reentering aliens twice for their prior criminal history); United States v. Campbell, 967 F.2d 20 (2d Cir.1992) (upholding "double counting" between U.S.S.G. Secs. 2L1.2 and 4A1.3).
 
 
 41
 The celebration behind the Sentencing Commission's decision to "double count" is eminently reasonable. As the court in Zapata tellingly explained:
 
 
 42
 [W]e can second-guess neither the Commission's determination that the offense of unlawful reentry subsequent to perpetrating an aggravated felony is sufficiently more serious than the commission of the same offense while toting less weighty baggage and, thus, warrants greater punishment, nor its allied determination that an alien who, having been deported following a conviction for an aggravated felony, and having exhibited a willingness to flout our laws again by reentering the country without permission, may be more likely to commit serious crimes than an alien who unlawfully reenters this country with no criminal record or with a less sullied record, and, thus, deserves a sentence possessing greater deterrent impact.
 
 
 43
 Zapata, 1 F.3d at 49. We, too, cannot take issue with the discretionary choice made by the Sentencing Commission to punish certain previously deported aliens more severely than others. Accordingly, we must reject Crawford's "double counting" argument.
 
 IV
 
 44
 Finally, in a related argument, Crawford contends that, in calculating his criminal history category, the use of his November 1990 aggravated felony conviction to assess six criminal history points pursuant to U.S.S.G. Sec. 4A1.1(a), U.S.S.G. Sec. 4A1.1(d), and U.S.S.G. Sec. 4A1.1(e) amounts to impermissible "triple counting." We disagree.
 
 
 45
 To the extent that Crawford's argument is couched in terms of "triple counting" as opposed to "double counting," we believe the appropriate standard to be applied here is the one announced in Williams and Curtis. That is, "triple counting" will be upheld unless it is expressly prohibited by the guidelines. Williams, 954 F.2d at 208; Curtis, 934 F.2d at 556. Because the guidelines were applied as written, as Crawford readily concedes, Crawford's "triple counting" argument cannot be sustained. The Sentencing Commission's determination not to prohibit the "triple counting" that occurred here is, without question, logical and rational. As the district court noted below, Crawford's criminal history point total was not the product of impermissible "triple counting":
 
 
 46
 [T]he answer to Crawford's "triple counting" argument is that the Guidelines' scheme for calculating criminal history, which Crawford does not attack, specifically provides for such calculations based on a single event of past criminal conduct.... [T]he aggravated felony conviction was counted because of its type and its temporal relationship to the underlying offense of conviction, two separate considerations in the criminal history calculus. Moreover, to avoid impermissible overlap, Sec. 4A1.1(e) provides for only 1 criminal history point if 2 points were awarded under Sec. 4A1.1(d).
 
 
 47
 Crawford, 815 F.Supp. at 926. Moreover, the guidelines themselves provide the appropriate avenue of relief. The district court is always free to depart downward if it finds that the "defendant's criminal history category significantly over-represents the seriousness of [the] defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. Sec. 4A1.3. Accordingly, Crawford's "triple counting" argument is without merit.
 
 V
 
 48
 For the reasons stated herein, the judgment of the district court is affirmed.
 
 
 49
 AFFIRMED.
 
 
 
 [1]
 Crawford's indictment provides in pertinent part:
 On or about July 23, 1992, in the Eastern District of Virginia, Casy Andrew Crawford ... an alien who had been previously arrested and deported from the United States, was unlawfully found in the United States, that is, in Portsmouth, Virginia, without having received the express consent of the Attorney General of the United States to reapply for admission to the United States.
 (In violation of Title 8, United States Code, Section 1326).
 (J.A. 5).
 
 
 [2]
 The jury instructions mirrored the elements contained in Sec. 1326(a)
 
 
 [3]
 In arriving at Crawford's sentence, the district court concluded that Sec. 1326(b) was a sentence enhancement provision. Without this finding, the district court could not have sentenced Crawford to seventy-seven months' imprisonment because Crawford's minimum sentence under his guideline range would have exceeded Sec. 1326(a)'s statutory maximum sentence of two years. See U.S.S.G. Sec. 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.")
 
 
 [4]
 See Pub.L. 100-690, Title VII, Sec. 7345(a), 102 Stat. 4471; Pub.L. 101-649, Title V, Sec. 543(b)(3), 104 Stat. 5059
 
 
 [5]
 The 1990 amendment merely substituted provisions referring to Title 18 for the fine amount in lieu of provisions setting forth a $1,000 maximum fine
 
 
 [6]
 A "prior sentence" is defined as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." U.S.S.G. Sec. 4A1.2(a)(1)